USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTONIA PEARSON,

          Plaintiff,

v.

CITY OF NEW YORK, EMARILIX LOPEZ, and PETER IANNIELLO,

          Defendants.

20-CV-3592 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Antonia Pearson brings this action against Defendants New York City, Emarilix Lopez, and Peter Ianniello, (collectively, "Defendants"), alleging that they discriminated against her on the basis of her age and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000-e, *et seq*. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"). Defendants have moved to dismiss the Complaint on several grounds, including timeliness. For the reasons that follow, the motion is granted.

## BACKGROUND

    The following facts are primarily drawn from the Complaint, filed May 6, 2020, Dkt. 2 ("Compl."), as well as the Declaration of Antonia Pearson, dated March 19, 2021, Dkt. 36 ("Pearson Decl."); the Declaration of Defendants' Counsel Ryan Nasim, dated February 5, 2021, Dkt. 26 ("Nasim Decl."); and the exhibits attached thereto. The Court may consider these documents at this time because they are integral to the Complaint, they were incorporated by reference into the Complaint, and/or they are "matters of which judicial notice may be taken." *See Alvarez v. County of*

*Orange*, 95 F. Supp. 3d 385, 392 (S.D.N.Y. 2015) (permitting consideration of such documents on a motion to dismiss); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). Moreover, because Plaintiff is proceeding *pro se*, the Court will also draw facts from her opposition to the instant motion. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that on a motion to dismiss, a court may consider "factual allegations made by a *pro se* party in [her] papers opposing the motion").

## I. Pearson's Employment

Plaintiff Antonia Pearson is a 65-year-old black woman. Pearson Decl. ¶ 3. From September 8, 2016 through June 26, 2018, she worked at Metropolitan Soundview High School ("Soundview") in the Bronx as a science teacher. *Id*. ¶ 4. Her position was probationary. *Id*. ¶ 19.

Pearson was hired at Soundview by Assistant Principal Ross Hogan, with whom she had worked previously. Compl. ¶ 5. Following the 2016-2017 school year, Hogan left Soundview. *Id*. ¶ 10. Pearson alleges that following his departure, she began receiving "harsh observations and disciplinary letters," *id*., although she also asserts that prior to Hogan's departure she received informal observations that were "harsh and unfair," *id*. ¶ 8.

In the fall of 2017 and again in the spring of 2018, Pearson was assigned to teach an online course. *Id*. ¶ 12. In conjunction with this course, Pearson was obligated to contact her students once per week and to obtain signed syllabi from them. *Id*. ¶ 16; Pearson Decl. Ex. 3. In addition, Pearson was required to maintain her students' grades on a program called Skedula. *Id*. ¶ 17; Pearson Decl. Ex. 4.

In March 2018, Defendant Lopez, Soundview's Principal, asked Pearson to leave the school and instructed her to look for other employment. *Id*. ¶ 15.

In April 2018, Pearson was issued a disciplinary letter for purportedly failing to obtain signed syllabi or "reach out to . . . students once per week." *Id*. ¶ 16; Pearson Decl. Ex. 3. According to the exhibits filed in conjunction with her Declaration, Pearson did not send the weekly emails because she

"forgot" to do so. Pearson Decl. Ex. 3. Regarding the syllabi, she asserts that she tried to communicate with her students but failed to obtain the syllabi from them. Pearson Decl. ¶ 19.

In May 2018, she received a disciplinary letter for failing to maintain accurate weekly grades on Skedula. Compl. ¶ 17; Pearson Decl. Ex. 4. According to this letter, Pearson had received multiple emails from the assistant principal telling her to assign grades on Skedula on a regular basis. Pearson Decl. Ex. 4. In a July 1, 2018 letter to the superintendent, Pearson stated that she "knew the grades had to be" recorded but that she "was extremely overwhelm[ed] and did not have the time" to do so. *Id*. Ex. 5. In the Complaint, on the other hand, Pearson alleges that she did not comply with this requirement because a program director had told her on two occasions that she need not regularly input and update her students' grades and had later instructed her to regularly record her students' grades on Microsoft Excel rather than Skedula. Compl. ¶¶ 13–14. Following her receipt of this May 2018 letter, Pearson transferred her grades from Excel to Skedula. *Id*. ¶ 18.

On June 26, 2018, Pearson received a letter of probationary discontinuance from her employment with the Department of Education ("DOE"). *Id*. ¶ 19. In response, she submitted a request to extend her probation period through August 2018, to allow her to "complete the hiring process at another school." Pearson Decl. ¶ 23 & Ex. 5. That request was denied. Pearson Decl. ¶ 23.

Following her termination from Soundview, Pearson tried to obtain employment as a substitute teacher, but was unsuccessful. Compl. ¶¶ 21, 24. In her declaration, she attributes this failure to the fact that she was "rated ineffective the prior year." Pearson Decl. ¶ 26 & Ex. 6–7. In the Complaint, by contrast, she asserts that it was her termination from Soundview that prevented her from becoming a substitute teacher, because the termination "disallow[ed] [her] to teach at any other school within the NYC Department of Education." Compl. ¶ 20. On September 17, 2018, after her application to become a substitute teacher was denied, Pearson wrote an email to Defendant Peter Ianniello, the Superintendent, and requested that he reconsider her application. Pearson Decl. Ex. 7 at 2. On September 20, Ianniello

3

responded, denying the request and informing Pearson that her "nomination to become a Substitute teacher has been cancelled." *Id*. at 1.

## II. Pearson's Allegations of Discrimination

Defendant Emarilix Lopez, who Pearson describes as "Hispanic and approximately 40 years old" was the principal of Soundview for the duration of Pearson's employment at the school and is the person who terminated her employment there. *Id*. ¶¶ 5, 15. Pearson claims that on one occasion, Lopez made a comment to Pearson that senior position teachers were a financial burden to the school. *Id*. ¶ 9. She further alleges that "[u]pon information and belief, Principal Lopez has targeted other senior level teachers [at Soundview] such as Nicole Bonnick and Kathy Smith, and replaced them with younger individuals." *Id*. ¶ 22. Specifically, she asserts that Nicole Bonnick, an African American teacher in her forties, was terminated by Lopez in 2017. Pearson Decl. ¶ 10. She also alleges that Kathy Smith, a white teacher in her fifties, was terminated by Lopez in 2018. *Id*. ¶ 11. And although she does not identify this person by name, she attests that her co-teacher for the 2016-2017 school year "is also an older, black teacher who was treated the same as [Pearson] in that her services were also discontinued on the same day [Pearson] was discontinued." Compl. at 18.

In very general terms, Pearson contrasts the school's treatment of her with its treatment of her younger and/or non-black counterparts. She asserts that while she and her "co-teachers" made collective lesson plans, "Plaintiff received negative ratings, [while] upon information and belief, her younger counterparts did not." Pl. Mem. at 12. She also notes that "[an]other older probationary teacher, who is white, received an extension of her probationary teacher status without even requesting one," while she was denied an extension of her probationary status following her termination. *Id*.

## III. Procedural History

Pearson filed an administrative charge with the New York State Division of Human Rights ("SDHR") in July 2019. Nasim Decl. Ex. A at 4. She authorized the SDHR to accept the charge on

behalf of the U.S. Equal Employment Opportunity Commission ("EEOC"), which processed her federal administrative claims. *Id*.

The parties dispute when Plaintiff filed this administrative charge. Pearson alleges that she filed the charge on July 15, 2019. *See* Compl. at 6. The SDHR's Determination and Order of Dismissal of Pearson's claim ("SDHR Order") states that the charge was filed on July 22, 2019. *See* Nasim Decl. Ex. B at 1. The administrative charge itself, meanwhile, is stamped with the date July 19, 2019, suggesting that this was the date on which the charge was received. *See id*. Ex. A at 2.

On November 26, 2019, the SHDR closed its file on Pearson's charge because Pearson represented that she wished to pursue the matter in federal district court. Nasim Decl. Ex. B at at 2. The EEOC closed its file on Pearson's charge on February 6, 2020 for the same reason. Compl. at 12. Pearson received notice of her right to sue on February 8, 2020. *Id*. at 6. She commenced this litigation four months later on May 6, 2020. Dkt. 2. In the Complaint, she raised claims of discrimination based on her age and race under federal, state, and local law. Compl. at 4. She seeks compensatory and emotional distress damages. *Id*. at 6.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks omitted) (alterations adopted). Similarly, "[t]he Court need not accept as true any allegations that are contradicted by documents deemed to be

part of the complaint, or materials amenable to judicial notice." *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 216 (E.D.N.Y. 2003) ("[I]f the allegations of a complaint are contradicted by documents made a part therefore, the document controls and the court need not accept as true the allegations in the complaint.").

"Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id*. (citing *Harris*, 572 F.3d at 73).

## DISCUSSIONS

### I. Timeliness of Pearson's Title VII and ADEA Claims

Federal law requires that, for claims brought pursuant to Title VII and the ADEA, a plaintiff file his or her charge of discrimination within 300 days of an alleged discriminatory act. 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d)(1)(b); *see Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000). The Second Circuit has yet to rule on whether an administrative claim is deemed to be "filed" on the date on which the plaintiff puts it in the mail or on the date on which it is stamped "received" by the applicable administrative agency. *See Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 579 (2d Cir. 2020) (noting that "the issue [of] whether the charge is 'filed' on the date that the plaintiff faxes the complaint to the EEOC or on the date that the EEOC officially stamps the complaint 'received'[] is an issue of first impression in this Circuit," but declining to resolve the issue because the plaintiff's claims were untimely under either rule). District courts in this Circuit, however, routinely hold the latter. *See, e.g., Wu v. Good Samaritan Hosp. Med. Ctr.*, 17-CV-4247 (SJF) (ARL), 2019 U.S. Dist. LEXIS 110720, 2019 WL 2754865, at *3 (E.D.N.Y. July 2, 2019) ("[A] charge of discrimination brought pursuant to Title VII is filed with the EEOC on the date it is stamped 'received,' notwithstanding

6

plaintiff's allegation of an earlier date in the amended complaint."); *Allen v. New York City Dep't of Envtl. Prot.*, 51 F. Supp. 3d 504, 510 n. 3 (S.D.N.Y. 2014) ("A charge is not considered to be filed with the EEOC until the EEOC receives the charge and stamps it with the appropriate date."); *Torrico v. IBM*, 319 F. Supp. 2d 390, 401 (S.D.N.Y. 2004) (conducting a timeliness analysis based on when the EEOC received the plaintiff's charge); *Rouse v. Hausman Servs. Corp.*, 93-CV-3215 (LLS) (MHD),1995 U.S. Dist. LEXIS 15611, 1995 WL 619868, at *7 (S.D.N.Y. Oct. 23, 1995) ("The effective date of filing a dual filed charge will be the date a charge is initially received by the NYSDHR."). Complaints filed with the NYSDHR are considered to be cross-filed with the EEOC; therefore, "the date of filing with the NYSDHR is the date of filing with the EEOC for purposes of the statute of limitations." *Morales v. City of New York Dep't of Justice*, 10-CV-829 (JGK), 2012 U.S. Dist. LEXIS 7277, 2012 WL 180879, at *4 (S.D.N.Y Jan. 23, 2012).

There is disagreement between the parties as to when Plaintiff submitted her administrative charge. Pearson alleges that she filed the charge with the SDHR on July 15, 2019, *see* Compl. at 6, while Defendants rely on the fact that the SDHR Order asserts that the charge was filed on July 22, 2019, *see* Def Mem. at 7 (citing Nasim Decl. Ex. B at 1). As noted above, when an allegation made in a complaint is contradicted by an official document of which the Court may take judicial notice—like the above-cited SDHR Order[1]—the Court need not accept the allegation as true. *See In re MBIA*, 700 F. Supp. 2d at 576. Here, however, the official document in question is inconsistent with another official document of which the Court may also take judicial notice: while the SDHR Order says the charge was filed on July 22, the charge itself was stamped as received on July 19. *See* Nasim Decl. Ex. A at 2. In light of the discrepancy between these two official documents, the Court declines to give deference to the SDHR

---

[1] *See Volpe v. Nassau Cnty.*, 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013) (taking judicial notice of plaintiff's SDHR complaint and the SDHR decision on defendant's motion to dismiss); *Fraticelli v. Good Samaritan Hosp.*, 11-CV-3376 (VB), 2012 U.S. Dist. LEXIS 135794, 2012 WL 4069292, at *3 (S.D.N.Y. July 23, 2012) (taking judicial notice of the "plaintiff's EEOC charge filed with the NYSDHR" in ruling on the motion to dismiss).

7

Order and will therefore accept as true Plaintiff's assertion that she submitted her administrative charge on July 15, 2019.

Regardless of the date on which the charge was sent, however, it appears uncontested that the administrative charge was stamped as received by the SDHR on July 19, 2019. *See* Nasim Decl. Ex. A at 2. Following the other judges in this District, the Court thus concludes that, that for purposes of the statute of limitations, July 19 is the operative date of "filing" for the administrative charge. *See Wu*, 2019 WL 2754865, at *3; *Allen*, 51 F. Supp. 3d at 510 n. 3; *Torrico*, 319 F. Supp. 2d at 401; *Rouse*, 1995 WL 619868, at *7. Accordingly, for her claims to be timely, Pearson must allege that Defendants committed a discriminatory act on or after September 22, 2018—that is, within 300 days of July 19, 2019. *See McPartlan-Hurson v. Westchester Cmty. College*, 804 F. App'x 41, 43 (2d Cir. 2020). Because she has not done so, her Title VII and ADEA claims are untimely and thus must be dismissed.

Pearson seeks to circumvent this conclusion by asserting that the discrimination she allegedly suffered was part of a continuing violation. Pl. Mem. at 6 (citing *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) and *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–18 (2002)). Under the continuing violation doctrine, if a plaintiff has experienced a "'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985), *cert. denied*, 474 U.S. 851 (1985)). For the continuing violation doctrine to apply, however, "at least one act" committed in furtherance of a discriminatory policy or practice must fall within the limitations period. *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (emphasis omitted) (quoting *Morgan*, 536 U.S. at 122). As identified above, none of the purportedly discriminatory acts Pearson alleges to have experienced fell within the limitations period. For this reason, Pearson cannot rely on the continuing violation doctrine to resuscitate her untimely federal claims.

In any event, even if the administrative charge were deemed to have been "filed" on the date it was sent (rather than the date it was received), Pearson's federal claims would still fail. If the filing date of Pearson's administrative charge was indeed July 15, 2019, as she claims, then the limitations period would run from September 18, 2018. The Complaint describes only one potentially discriminatory act that occurred after September 18, 2018. The exhibits submitted in connection with Pearson's declaration show that on September 17, 2018, Pearson wrote to Superintendent Ianniello and requested that he reconsider her application to become a substitute teacher. Pearson Decl. Ex. 7 at 2. On September 20, Ianniello responded, denying the request and informing Pearson that her "nomination to become a Substitute teacher has been cancelled." *Id*. at 1.[2]

Pearson has pled no facts, however, that support the conclusion that Ianniello's refusal to reconsider her application occurred under circumstances giving rise to an inference of discriminatory intent. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). A plaintiff can raise such an inference either through direct evidence of discriminatory animus or by showing that similarly situated employees received preferential treatment. *See Littlejohn*, 795 F.3d at 312; *Ruiz v. City of New York*, No. 14-CV-5231 (VEC), 2015 U.S. Dist. LEXIS 117947, 2015 WL 5146629, *11 (S.D.N.Y Sept. 2, 2015). Pearson has done neither. She has made no allegations that directly support the conclusion that Ianniello intended to discriminate against her. *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 356 n.23 (S.D.N.Y. 2006). Nor has she established that similarly situated employees received preferential treatment. Indeed, Pearson has pled no facts regarding other applicants for substitute teaching positions, much less that these applicants were "similarly situated" to her. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (dismissing discrimination claims where "the Amended Complaint does not allege that any

---

[2] Pearson raises no allegations about this incident in the Complaint. Indeed, in her SDHR complaint, Pearson averred that "the most recent discrimination [against her] happened on [July] 26, 2018"—several months before this email communication. Nasim Decl. Ex. A.

similarly situated . . . employee received more favorable treatment than [plaintiff]—the Amended Complaint fails to identify, let alone describe, any purported comparator."). Accordingly, she has failed to plausibly plead that Ianniello's refusal to reconsider her substitute teaching application on September 20, 2018 was a discriminatory act. Thus, even if the Court were to deem Pearson's administrative charge to have been filed on July 15, 2019, when she alleges she "filed" it, Plaintiff's claims would nonetheless fail because she has not alleged that any discriminatory act took place within the limitations period.

Plaintiff's Title VII and ADEA claims are thus dismissed.

## II. State and Local Claims

Pearson has also brought claims of discrimination under state and municipal law. Compl. at 5. Although federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction," *id*. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Here, the Court has granted Defendants' motions to dismiss as to all of Pearson's federal claims. "Because the Court addressed and dismissed these claims early in the litigation, declining jurisdiction over the remaining state and municipal claims would not disserve the principles of judicial economy, convenience, or fairness." *See Anderson v. New York City Dep't of Fin.*, No. 19-CV-7971 (RA), 2020 U.S. Dist. LEXIS

70428, 2020 WL 1922624, at *10 (S.D.N.Y Apr. 21, 2020). For this reason, the Court declines to exercise supplemental jurisdiction over Pearson's state and local claims.[3]

### III. Leave to Amend

Pearson seeks leave to file an Amended Complaint. Pl. Mem. at 2. Whether to grant or deny leave to amend is committed to the "sound discretion of the district court," and leave may be denied when amendment would prove futile. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009). Although on the facts before it the Court is skeptical that Plaintiff will be able to overcome the Court's finding on timeliness, it will grant her motion for leave to amend. If Plaintiff has a good faith basis to believe that discriminatory acts occurred within 300 days of July 19, 2019—that is, after September 22, 2018—she should include these facts in her amended complaint.

---

[3] Because the Court dismisses this action in full, it need not address Defendants' alternative argument that the claims against the City of New York should be dismissed because the City of New York and the DOE are separate legal entities and the former cannot be held liable for the torts of the latter. *See* Def. Mem. at 16.

## CONCLUSION

Defendants' motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 25. If Plaintiff wishes to file an amended complaint, she must do so no later than July 31, 2021. If no amended complaint is filed by this date, this case will be closed.

The Clerk of Court is respectfully directed to mail a copy of this memorandum opinion and order to Plaintiff.

SO ORDERED.

Dated: July 9, 2021
        New York, New York

                                          RONNIE ABRAMS
                                          United States District Judge