UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTONIA PEARSON, *an individual*,

                Plaintiff,

        v.

CITY OF NEW YORK; EMARILIX LOPEZ, PRINCIPAL OF THE METROPOLITAN SOUNDVIEW HIGH SCHOOL; and PETER IANNIELLO, EXEC. DIRECTOR OF HR SCHOOL SUPPORT,

                Defendants.

No. 20-CV-3592 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

After her original Complaint was dismissed, Plaintiff Antonia Pearson filed a *pro se* Amended Complaint against Defendants New York City, Emarilix Lopez, and Peter Ianniello (collectively, "Defendants"), alleging that they discriminated against her on the basis of her age and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e, *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"). Defendants have moved to dismiss the Amended Complaint on several grounds, including the same timeliness deficiency relied upon by the Court in dismissing the initial Complaint. For the reasons that follow, the motion to dismiss is granted.

## BACKGROUND

The following facts are primarily drawn from the Amended Complaint, filed November 2,

2021, and are assumed to be true for the purposes of this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). The Court also considers the addendum to the Amended Complaint and the exhibits attached thereto given that they are integral to the Complaint, were incorporated by reference, and are "matters of which judicial notice may be taken." *See Alvarez v. Cnty. of Orange*, 95 F. Supp. 3d 385, 392 (S.D.N.Y. 2015) (permitting consideration of such documents on a motion to dismiss); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (noting a "complaint is deemed to include any written instrument attached to it as an exhibit"). Because Plaintiff is proceeding *pro se*, the Court also draws facts from her opposition to the instant motion. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (observing that on a motion to dismiss, a court may consider "factual allegations made by a *pro se* party in [her] papers opposing the motion").

### I. Plaintiff's Employment at Soundview

Pearson is a 65 year-old Black woman. Am. Compl. Add. ¶ 2. From September 8, 2016 until June 26, 2018, she worked at Metropolitan Soundview High School ("Soundview") in the Bronx as a living environment and health teacher. *Id.* ¶ 4. During the 2016–17 school year, Plaintiff worked with a teaching coach employed by the New York City Department of Education ("DOE") to develop lesson plans. *Id.* ¶ 7. Plaintiff brought observation reports regarding her performance to the teaching coach, and, on multiple occasions, he responded by saying that the observation reports she had received were "harsh and unfair." *Id.* ¶ 8.

The next school year, Plaintiff taught three classes with a co-teacher, as well as two online courses. *Id.* ¶ 12. She alleges that she was not provided instruction on how to teach the online course in the fall of 2017, or how she should grade the coursework she assigned. *Id.* ¶ 13. Plaintiff was later emailed by the program director for the online course and advised that she need not

regularly input and update grades; this was later reaffirmed by phone. *Id.* ¶ 14. Early in the spring 2018 semester, Assistant Principal ("AP") Hillary Gellis directed Plaintiff to record grades in Microsoft Excel. *Id.* ¶ 15.

In March 2018, Principal Emaralix Lopez asked Plaintiff to look for employment elsewhere. *Id.* ¶ 16. This was followed by an April 25, 2018 disciplinary letter from Lopez admonishing Plaintiff for her failure to communicate or obtain syllabi, *id.* ¶ 17, as well as a May 7, 2018 disciplinary letter from Lopez indicating that Plaintiff had failed to maintain accurate weekly grades in Schedulea, a program specifically used to input grades, *id.* ¶ 18. On June 26, 2018, Plaintiff received a formal letter of probationary discontinuance of her employment from the DOE. *Id.* ¶ 21. After Plaintiff requested an extension of her probationary service, Superintendent Paul Rotondo affirmed the discontinuance on July 26, 2018. *Id.* ¶ 23.

**II.     Plaintiff's Subsequent Teaching Application and Employment at World Cultures**

After receiving a nomination from another school principal within the New York City DOE, Plaintiff applied for a substitute teaching position for the fall of 2018. *Id.* ¶ 27. Her application was denied, however, because according to DOE Human Resources, her prior discontinuance raised a "red flag"—that is, the "termination code" associated with her prior employment at Soundview made her ineligible for a teaching position within the DOE. *Id.* ¶ 30.

The United Federation of Teachers ("UFT") appealed Plaintiff's discontinuance of probationary service, and a meeting was held with the Chancellor's Committee on February 15, 2019. *Id.* ¶ 31. Following the meeting, Superintendent Rotondo again reaffirmed the recommendation to terminate Plaintiff's employment on February 26, 2019. *Id.* ¶ 32.

Plaintiff eventually secured employment in March 2019 at World Cultures High School, through a state-run program called Liberty Partnership, which is located in the same building as

Soundview. *Id.* ¶ 34. On March 21, 2019, as Plaintiff was entering the building, Principal Lopez attempted to have security remove Plaintiff from the building. *Id.* ¶ 35. After advising security that she worked in the building, Plaintiff was allowed to enter. *Id.* ¶ 35. Nonetheless, Principal Lopez allegedly "harass[ed]" Plaintiff by proceeding to stand outside her classroom and "star[e]" at her; Lopez later told Plaintiff's new employer that he should fire her and that she should "never be allowed to work again." *Id.* ¶ 35.

### III. Plaintiff's Allegations of Discrimination

Plaintiff claims that she was "targeted and discriminated against based on [her] age and race." *Id.* ¶ 36. In support, she alleges that, in March 2017, Principal Lopez remarked in a conversation that "senior position teachers" were a financial burden on Soundview. *Id.* ¶ 9. She also points to alleged disparate treatment of other employees to support her claims. For instance, Plaintiff alleges that, although she planned all of her lessons together with younger co-teachers, she was "the only one who received negative remarks for her lesson plans." Opp. to Mot. at 13. Moreover, she alleges another older teacher was "targeted and pushed out of the school" with a discontinuance. *Id.* at 16; Am. Compl. Add. ¶ 26. And that older teacher, who is not a person of color, received an extension of her probationary teacher status even without requesting one, whereas Plaintiff, who is Black, was denied an extension of her probationary term. Opp. to Mot. at 16–17.

## PROCEDURAL HISTORY

Plaintiff filed an administrative charge with the New York State Division of Human Rights ("NYSDHR") in July 2019. She authorized the NYSDHR to accept the charge on behalf of the U.S. Equal Employment Opportunity Commission ("EEOC"), which processed her federal administrative claims. The administrative charge is stamped as received on July 19, 2019. *See*

Nasim Decl. Ex. A at 2.  On November 26, 2019, the NYSDHR closed its file on Plaintiff's charge because she represented that she wished to pursue the matter in federal district court.  The EEOC closed its file on Plaintiff's charge on February 6, 2020 for the same reason.  *See* Am. Compl. Ex. A.

Plaintiff then commenced this action on May 6, 2020, raising claims of discrimination based on age and race under federal, state, and local law, and seeking compensatory and emotional distress damages.  *See* Compl. at 4–6.  This Court dismissed the initial Complaint on timeliness grounds in an order dated July 9, 2021, reasoning that Plaintiff had not filed her administrative charge of discrimination within 300 days of any alleged discriminatory act.  *See* Order at 6–12.  Although the Court noted that it was "skeptical that Plaintiff will be able to overcome the Court's finding of timeliness," it nonetheless granted Plaintiff leave to amend.  *Id*. at 11.  Plaintiff's Amended Complaint was filed on November 2, 2021, and Defendants moved to dismiss on November 16, 2021.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (cleaned up).  Thus, while the Court must "accept[] all factual allegations as true," it gives "no effect to

legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id*.

## DISCUSSION

### I. Timeliness of Plaintiff's Title VII and ADEA Claims

"To sustain a claim for unlawful discrimination under Title VII and/or the ADEA, a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000); *see also* 42 U.S.C. §§ 2000e–5(1) & (3); 29 U.S.C. § 626(d)(1)(b). Complaints filed with the NYSDHR are considered to be cross-filed with the EEOC such that "the date of filing with the NYSDHR is the date of filing with the EEOC for purposes of the statute of limitations." *Morales v. City of N.Y. Dep't of Just.*, 10-cv-829 (JGK), 2012 WL 180879, at *4 (S.D.N.Y. Jan. 23, 2012) (citing *Govia v. Century 21, Inc.*, 140 F. Supp. 2d 323, 325 n.1 (S.D.N.Y. 2001)). As the Court explained in its order dismissing the initial Complaint, it treats the date on which an administrative claim is stamped as "received" as the date the claim is deemed to have been "filed." Order at 6.[1] Accordingly, for her claims to be timely, Plaintiff's Amended Complaint must allege that Defendants committed a discriminatory act on or after September 22, 2018—that is, within 300 days of July 19, 2019. *See McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43

---

[1] While the Second Circuit has expressly declined to resolve "whether the charge is 'filed' on the date that the plaintiff faxes the complaint to the EEOC or on the date that the EEOC officially stamps the complaint 'received,'" *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 579 (2d Cir. 2020), district courts in this Circuit have consistently held the latter. *See, e.g., Wu v. Good Samaritan Hosp. Med. Ctr.*, 17-cv-4247 (SJF) (ARL), 2019 WL 2754865, at *3 (E.D.N.Y. July 2, 2019); *Allen v. New York City Dep't of Envt'l Prot.*, 51 F. Supp. 3d 504, 510 n.3 (S.D.N.Y. 2014); *Torrico v. IBM*, 319 F. Supp. 2d 390, 401–03 (S.D.N.Y. 2004).

(2d Cir. 2020).

Although Plaintiff's allegations remain largely unchanged in her Amended Complaint, she now identifies three purportedly discriminatory events occurring after September 22, 2018.[2] Specifically, she alleges that: (1) on February 26, 2019, "Superintendent Rotondo reaffirmed the recommendation to terminate" her following the meeting before the Chancellor's Committee, Am. Compl. ¶ 32; (2) Plaintiff subsequently could not be hired within the DOE because she was no longer found "in the system," *id*. ¶ 33; and (3) on March 21, 2019, Principal Lopez tried to have security remove Plaintiff from the building where World Cultures and Soundview are located, thereafter stood outside her classroom staring at her, and told her new employer that she should "never be allowed to work again," *id*. ¶ 35. Accepting these allegations as true as it must upon a Rule 12(b)(6) motion, the Court nevertheless finds that these new allegations do not cure the timeliness deficiency identified in its prior order of dismissal.

First, Superintendent's Rotondo's decision to reaffirm a prior termination decision cannot serve to toll or extend the statute of limitations period because that decision was made as a result of Plaintiff's decision to invoke 'grievance procedures' to appeal her termination. The "existence of grievance procedures that might conceivably reverse a termination decision does not serve to delay the commencement of the limitations period, so Plaintiff's argument that the [termination] did not commence the limitations period because it was subject to review via the grievance procedure cannot prevail." *Dykstra v. Wyeth Pharm., Inc.*, No. 8-cv-7432 (CS), 2010 WL 8906889, at *4 (S.D.N.Y. Sept. 16, 2010); *see also, e.g., Economu v. Borg-Warner Corp.*, 829

---

[2] Defendants characterize the Amended Complaint as alleging five events that purportedly occurred after September 22, 2018. *See* Mot. at 7–8. The Court does not reference the third event listed by Defendants—that Plaintiff was hired by World Cultures—because there is no allegation that her hiring involved a discriminatory act or was in any way adverse to her. The Court groups the fourth and fifth events listed by Defendants as a single allegation of continuing events occurring on March 21, 2019.

7

F.2d 311, 315 (2d Cir. 1987) (finding the limitation period commences when employee receives "a definite notice of the termination"); *Hale v. N.Y. State Dep't of Mental Health*, 621 F. Supp. 941, 942 (S.D.N.Y. 1985) (holding it is "well-settled that the existence and utilization by plaintiff of grievance procedures does not toll the running of Title VII's limitations period," and that the limitations period begins to run when plaintiff is notified of the discharge, as that is the allegedly discriminatory act); *Lyda v. Am. Broad. Cos., Inc.*, 587 F. Supp. 670, 672–73 (S.D.N.Y. 1984) (holding that limitations period began to run when plaintiff was notified she would be terminated); *Pfister v. Allied Corp.*, 539 F. Supp. 224, 226–27 (S.D.N.Y. 1982) (observing that the limitations period commences when the employer decision is made, and the existence of procedures to assure fairness does not stop it).

Similarly, Plaintiff's arguments that "being denied eligibility as a substitute teacher" and "being removed from Galaxy" state timely acts of discrimination also fail. According to Plaintiff's own revised allegations, her application to be a substitute teacher within the DOE was denied on September 12, 2018 because of an unsatisfactory rating received for prior teaching. Am. Compl. Add. ¶ 28. And even accepting that follow-up communications with DOE Human Resources could somehow toll the limitations period, the Amended Complaint alleges that Plaintiff was notified that her application was cancelled due to the rating in her file on September 20, 2018, *id.* ¶ 29—again, prior to September 22, 2018, and therefore outside the limitations period. Moreover, Plaintiff's removal from "the system" (Galaxy) necessarily occurred contemporaneously with the letter of probationary discontinuance dated June 26, 2018—as the Amended Complaint alleges, the "red flag r*aised by [her] discontinuance* . . . makes [her] ineligible for a substitute teacher position." *Id.* ¶ 30 (emphasis added).

Likewise, the new allegations of events occurring in March 2019 cannot cure the timeliness

deficiency. Unlike a plaintiff bringing claims of a policy or practice of discrimination (such as a "hostile work environment claim"), "a plaintiff alleging 'discrete discriminatory acts' including 'termination . . . or refusal to hire' will not trigger the continuing-violations doctrine." *Drew v. Plaza Const. Corp.*, 688 F. Supp. 2d 270, 279 (S.D.N.Y. 2010); *see also Trang v. DC-37, Local 1549 A.F.S.C.M.E.*, 98-cv-5927, 2001 U.S. Dist. LEXIS 12676, at *17 (GEL) (KNF), (S.D.N.Y. Aug. 7, 2001) (a plaintiff must allege a "discriminatory policy or practice" under the continuing violation doctrine). Instead, "the continuing-violation doctrine applies where there is evidence of specific discriminatory practices, such as the repeated use of discriminatory seniority lists or employment tests." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997). "[A] continuing violation cannot be established merely because a plaintiff continues to feel the effects of a time-barred discriminatory act." *Trang*, 2001 U.S. Dist. LEXIS 12676, at *17 (citing *Lightfoot*, 110 F.3d at 907); *see also id*. (observing that the continuing violations doctrine does not apply when there are only discrete acts of discrimination, such as termination, "that are unrelated to an identifiable policy or practice"). Plaintiff does not here allege a discriminatory policy or practice—"[m]erely invoking the words 'continuing violation' is not sufficient to establish that the continuing violation doctrine is applicable to time-barred claims." *Id*.

As such, to state a claim of discrimination under federal law within the limitations period, Plaintiff must allege that an adverse employment action occurred as a result of Lopez's actions on March 21, 2019 while she was employed at World Cultures. *See Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 467 (S.D.N.Y. 2013). This she does not do. *See id*. (noting that an adverse employment action is a materially adverse change in employment conditions, and must be "more disruptive than a mere inconvenience or an alteration of job responsibilities"). Lopez's alleged "harassment" by "standing outside [Plaintiff's] classroom and staring" is not an adverse

employment action. Am. Compl. Add. ¶ 35; *see Trachtenberg*, 937 F. Supp. 2d at 467 ("Nor does [defendant's] alleged habit of standing in the area and staring at [plaintiff] in an effort to intimidate her constitute an adverse employment action.") (cleaned up). And the Amended Complaint nowhere suggests that any action was taken by World Cultures on the basis of Lopez's request that security bar Plaintiff from entering, or Lopez's later remarks to the Plaintiff's new principal.

Accordingly, the Court finds that none of the new allegations are sufficient to cure Plaintiff's failure to state claims of discrimination under Title VII and the ADEA upon which relief can be granted within the applicable limitations period.[3]

## II.     State and Municipal Claims

Plaintiff's claims of discrimination under state and municipal law do not salvage this federal action. District courts "may decline to exercise supplemental jurisdiction over a claim" once it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Thus, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (citation omitted). "Because the Court addressed and dismissed [the federal] claims early in the litigation, declining jurisdiction over the remaining state and municipal claims would not disserve the principals of judicial economy, convenience, or fairness." *Anderson v. N.Y. City Dep't of Fin.*, No. 19-cv-7917 (RA), 2020 WL 1922624, at *10 (S.D.N.Y. Apr. 21, 2020).[4] Accordingly, the

---

[3] Because the Court finds the federal claims time-barred, it need not determine whether they are cognizable against the individual defendants, Lopez and Ianniello. *See* Mot. at 21 (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) (holding "defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998)).

[4] Because the Court declines to exercise supplemental jurisdiction over the state and munipal claims, it need not decide whether they are barred against Defendants pursuant to the one-year statute of limitations set forth in New

Court declines to assert supplemental jurisdiction over Plaintiff's claims under state and city law.

### III.  Leave to Amend

As she did upon the motion to dismiss the initial complaint, Plaintiff seeks leave to file a further amended complaint. Whether to grant or deny leave is committed to the "sound discretion of the district court," and leave may be denied when amendment would prove futile. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). For instance, "[g]ranting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009). The Court indicated in its order dismissing the initial complaint that it was "skeptical that Plaintiff will be able to overcome the Court's finding on timeliness." Order at 11. That skepticism proved correct. Given a second chance, Plaintiff once again has not plausibly alleged that discriminatory acts occurred within 300 days of July 19, 2019, or after September 22, 2018. The Court thus finds dismissal with prejudice to be warranted.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted with prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 47, and mail a copy of this order to Plaintiff.

SO ORDERED.

Dated:   September 29, 2022
         New York, New York

Hon. Ronnie Abrams
United States District Judge

---

York Education Law § 3813, *see Amorosi v. South Colonie Ind. Cent. School Dist.*, 9 N.Y.3d 367, 373 (2007), or alternatively should be dismissed as against the City because the DOE is a separate legal entity such that the former cannot be held liable for torts committed by the latter, *see* Mot. at 22–23.